Haynes, J.
This case comes into this court by way of appeal, and the-subject matter relates to a claim of contribution. Primarily, it relates to a claim that is made by the administrator of' the estate of Dr. Samuel S. Lungren as to whether he is entitled to the proceeds of certain property that was sold on partition sale, for the purpose of paying off the indebtedness of the estate.
The facts show that Dr. Lungren died testate in the-month of March, 1892. The Doctor had been a practicing physician for some years in the city of Toledo, and was-possessed of certain accounts and real estate, and also had certain life insurance policies on his own life. The will provided, first:
“I do desire that all my debts and liabilities, of whatsoever kind, owing by me at my death, shall be paid from money derived from accounts due me for medical services rendered. ”
And then he wills to his wife certain property, and to his children certain property; among other things he wills to his wife, Mary F. Lungren, and to his youngest daughter Virginia, otherwise known as Daisy, “to share in equal proportion, the residence now occupied by myself, together with the appurtenances thereto belonging, said premises being more particularly described as follows, viz: Lot 450 Port Lawrence Division, and that part of lot 1417 Vistula Division of the city of Toledo, Lucas county, Ohio, now standing in my name on the county records and owned by me.” This property, at the time, was encumbered with a *624 mortgage of $4,000, being a part of the purchase price of the premises, and was unpaid at the time of his death; and it is in relation to the paying off of this mortgage that this controversy has occurred. He then gives to his youngest daughter the proceeds of a policy of insurance on his life for $3,000, in the New York Life Insurance Company. “This policy was formerly payable to Mary F. Lungren, but has been transferred to my estate by said insurance company.” He then wills to his wife Mary F. Lungren, and to his youngest daughter, Virginia Lungren, “in equal proportions, to be by them divided as they may agree, all my personal property of whatsoever nature and kind, save and except as set forth in item 4th, to Charles Marshall Lungren, and item 5 to Virginia Lungren, otherwise known as Daisy. The bequest in this item six I desire to cover and include all the residue remaining from debts due me, whether shown by my book of accounts or otherwise, after having paid all liabilities of my own provided for in item one hereof.” He then gives and bequeaths to his five children in equal parts, to share and share alike, 40 acres of land, more or less, in Green county, Iowa; 80 acres in Lucas county, Ohio, and 25 lots in Lenk’s addition to the city of Toledo; also to be divided in the same manner the proceeds of a certain policy of insurance on his life in the sum of $10,000 in the Connecticut Mutual Life Insurance Company, of Hartford, Conn. He also willed that certain real estate that was held in trust by L. S. Baumgardner and all other property heretofore devised, should go to his estate, and after the payment of the debts owing by him,should be divided according to law.
The general debts have all been paid, and the accounts have ail been collected and exhausted. There is in the hands of the administrator the sum of $1,100, received from the sale of some property, and there is in the common pleas court a certain amount of money arising from the sale *625 ■of these lots in Lenk’s addition. One of the heirs filed a petition in partition in the court of common pleas, and such proceedings were had that the lots were sold, and upon those partition proceedings the sale was confirmed, and the money received therefrom is now in the hands of the court, or is subject to the order of distribution by the court. The administrator of Doctor Lungren’s estate says that there is ■due on the notes secured by the mortgage upon the home property $4,000, which has been allowed as a valid claim •against the estate, and he prays that this money, which is now in the hands of the court, be turned over to him to apply in the payment of that debt, and thus relieve the mortgaged property from the payment of the debt; and the parties holding that property are here asking for the same ■order or judgment. Thus the question which arises here is whether either the administrator or those parties holding that estate, have a right to call upon these five heirs who own this Lenk property,for contribution for the payment of that mortgage. And there is also another question, as to whether the property that was devised to the different heirs which arose from the life insurance, after that money has been collected and divided among the respective heirs, shall be subject to contribution, so far as is necessary, for the payment of that $4,000 mortgage.
It will be seen that by the terms of the will Dr. Lungren gave to the wife and Virginia the homestead property by name; that at the time he made his will that property was subject to the purchase-money mortgage, and that his interest in it was the equity of redemption. He owned these lots in Lenk’s addition, and they were free from encumbrance when he willed them to his five children absolutely. It is claimed here, first, that there being debts owing by the estate, to-wit: the debts arising upon the notes secured by this mortgage, the debt itself being the principal and the mortgage being to secure it, that the adminis *626 trator has the right to the proceeds of all property belonging to the decedent for the purpose of paying off that debt, and that in as much as there is no general fund in his' hands, the general estate having been exhausted, he has a right to have this life insurance of $10,000 placed in his-hands to use for the purpose of paying off that mortgage; that that money having been distributed among the heirs, he has a right to call upon them for contribution, and in like manner he has a right to have this money which arises-from the sale of these lots, at least so far as is necessary, to-reimburse the insurance fund, paid into his hands for the-purpose of paying this debt. We were cited by counsel toJarman on Wills, as laying down the general rule in regard to charges on estates. He says, page 1440:
“As to the general right of a devisee,in cases not affected by the statute, to be exonerated from an incumbrance to which the testator, either before or after the making of his will, has subjected the devised estate, there cannot, at this-day, be any doubt or controversy. And it is clear that the-legatee of any chattel, specially bequeathed, has the same right.
“Thus, where a testator holding lands for which he received rent and paid a head-rent, died leaving arrears of' rent due to him, which he specifically bequeathed, and also-arrears of head-rent due from him, it was held that the latter-must be paid out of the general personal estate in exoneration of the specific legatee.
“So a sum due from the testator to his lessor,in respect of a renewal granted during the testator’s lifetime, is payable out of the general personal estate, in exoneration of a specific legatee of the leasehold. And the specific legatee of leaseholds, on which the testator had covenanted to build, has been held entitled to have the covenant performed at the expense of the general personal estate, although the time for performing the covenant has not expired. But where a lessee was liable for dilapidations at the time of his death, it' was held that his specific legatee must himself bear the cost, of repairs.
*627 ’‘Under a gift of leaseholds ‘free from all outgoings and payments except the annual and other rent, ’ it was held that the legatee was entitled to have only all outgoings up to the time of his taking possession cleared out of the gen-eral estate.
“Again, if a testator bequeaths a watch' or a painting, and it turns out that at his decease the watch or painting is in pawn, the legatee is entitled to have it redeemed. And by parity of reason, if a testator specifically bequeaths a legacy to which he is entitled under a will, and afterwards assigns such legacy by way of mortgage, the legatee may claim to have the mortgage debt liquidated in exoneration of the subject of gift; and it would be immaterial that the mortgage deed contained a power of sale, by virtue of which the mortgagee might have absolutely disposed of the prop•erty and thereby have defeated the bequest, for in all these cases, the mortgage being considered to have been created by the testator for his own convenience, and not for the purpose of subtracting so much from the bequest, the act is not, as between the parties claiming under the will, an -ademption pro tanto, and cannot, without at least equal impropriety, be termed a partial revocation, though the latter designation has been commonly applied to it. If, therefore,the testator’s right of redemption remain unbarred at his decease, the devisee or legatee is entitled to require that it shall be exercised for his benefit. And if the ex•ecutor fails to perform this duty, the legatee is entitled to compensation.” ,
Jarman proceeds to discuss the question generally, and comes to mortgaged property, and he says this, on page 1443:
“Whether the will indicates an intention that the devisee or legatee shall take cum onere; and, if not, then, secondly, out of what fund is he entitled to claim exoneration. The courts require very clear expressions in order to fasten the incumbrance on the devisee- or legatee of the property in -question,
“Thus it is settled that a devise of lands, subject to the mortgage or incumbrance thereupon, does not so throw the charge on the estate, as to exempt the funds which by law *628 are preferably liable; the testator being considered to use the terms merely as descriptive of the incumbered condition of the property, and not for the purpose of subjecting his devisee to the burden- — -a construction which, though well established, it is more probable generally defeats the intention. ”
But proceeding in Jarman, beyond the parts cited by counsel, we find this
“Suppose, then, that the will contains no intimation of an intention to the contrary, the devisee of a mortgaged estate is entitled to have the incumbrance discharged out of the following funds: 1st. The general personal estate; 2nd. Lands expressly devised for payment of debts; 3d. Lands descended to the heirs; 4th. General pecuniary legacies, and 5th., lands devised charged with debts; and if the charge happened to reach the last class of estates, and if the devised mortgaged estate were included therein (as it of course would be if the charge were general), the devisee in question would be liable to contribute ratably with the other devisees. But the devisee of a mortgaged estate is not entitled to have it exonerated out of personalty specifically bequeathed — a point which was determined in O’Neal v. Mead, where a testator having devised lands, which he had mortgaged, to his eldest son in fee, and bequeathed a leasehold estate to his wife, it was held that the leasehold premises, being specifically bequeathed, were not liable to pay off the mortgage. And a fortiori a specific legatee of incumbered leaseholds cannot call upon a specific legatee of unincumbered leasehold to contribute towards the liquidation of the mortgage debt affecting the former exclusively; and a direction that the mortgage-money shall be paid out of the general personal estate, would not confer such right.”
That clearly shows that these lands lying in Lenk’s addition could not be used to pay off this mortgage.
“It is clear, also, that the devisee of a mortgaged estate cannot claim exoneration as against pecuniary legatees.”
I have read simply to show what the doctrine is as laid down by Mr. Jarman. However, we think there can be no question that this matter is decided by the Supreme Court *629 of this State. The case cited by counsel, 4 Ohio St. 333, was cited for the purpose of showing that under certain circumstances the estate would have to pay off the debt. Under the facts, correctly understood, that is not inconsistent with the rule laid down in the case, to which I shall now refer- — • Glass v. Dunn et al., 17 Ohio St. 413. William Dunn in 1858, died leaving a will by which he devised to each .of his children, of whom there were six — Thomas, Samuel, Caldwell, William and Jane — a specific tract of land, and to his son Robert the rents or proceeds of a 100 acre tract for his life support. A part of the devise to Caldwell and William was incumberd with a mortgage of $1,500. The will also contained pecuniary bequests, viz: $1,500 to Mary Caldwell Glass, $1,000 to Ephraim McCleary, and $1,000 to the children of Margaret Kennon. Whether those last two persons were relatives of his does not appear. Then, after several other dispositions of'property which need not be specified here, the will provides as follows:
“It is my will, and T direct my executor to make sale of my personal property and the farm in Guernsey county on which my son Samuel now resides, containing 112 acres; also, my mill property, with the land attached thereunto, situated on Wheeling creek, Belmont county, Ohio; and further, I direct that, should the suit now pending in the case trying my title to the lands held by me in Union county, Ohio, be decided in my favor, then, in that case, I direct my executor to make sale of the same. The proceeds arising from the sale of the beveral tracts herein ordered to be sold, together with the proceeds of my personal property, to be applied to the payment of my debts and the bequests herein made.
“It is my will, and I do hereby direct my executor that, immediately after the decease of my son, Robert Dunn, he make sale of the one hundred acres in Guernsey county, Ohio, left by me for his use; the proceeds arising from the sale thereof to be divided equally between my eight sons and daughters herein named, or to their heirs, together with all remainders or excess, after paying the within and aforementioned bequests by me herein made.”
*630 The statement oí the case further proceeds:
“The property specified in clause No. 13 has all been .sold by the executor, and the proceeds thereof, together -with all other personal assets of the estate, have been ex.hausted in payment of debts, leaving nothing to apply on ■the legacies, and leaving unpaid debts to the amount of two or three thousand dollars. Among the debts so paid by the •executor was that of $1,200 secured by the mortgage afore.said. Robert Dunn is still alive, and the 100-acre tract so ■devised for his life support has not yet been sold. The present action has been brought by Mary Caldwell Glass ■ and her husband, against the executor, devisees and legatees aforesaid,"to marshal the assets of the estate. The petition • and answer set forth, substantially, the facts aforesaid. The -object of the action is to compel Caldwell Dunn and William Dunn to refund the amount so paid upon the mortgage, to •be used as a fund for the payment of debts and legacies; to have the land so charged with the life support of Robert ■sold, subject to said life support, and the proceeds applied in like manner to the payment of debts and legacies; and to obtain from the several devisees a pro rata contribution to the legatees, so as to eqalize the loss arising from the -deficiency of assets for payment of debts and legacies.”
Welch, J., says, in delivering the opinion:
“The plaintiffs are clearly entitled to the relief they seek against Caldwell and William Dunn,- so far as regards the mortgage debt. It seems to be well settled law, that a •specific devisee of land incumbered by a mortgage, cannot, as between him and general pecuniary legatees- — -and a fortiori he can not as between him and specific legatees and •devisees- — -avoid the burden of paying the mortgage debt. He takes the land cum onere, unless the debt can be satisfied out of the personal assets, after payment of debts and legacies, out of land descended to the heir, or from some fund provided in the will for its payment. As between him and his co-devisees and legatees, he takes only the equity •of redemption in the land devised, and must himself pay the mortgage debt if it is to be paid. It follows that the amount so paid by the executor upon this mortgage must be ■¡refunded by Caldwell and William, in proportion corre *631 sponding with the value of the land of each, to "'be applied by the executor in payment of the debts and legacies.”
C. T. Johnson and W. H. A. Bead, for Administrator.
Bassett, McLellan & Waehenheimer, for Heirs.
We think, that the decision and the law of the land require us to dismiss this cross-petition of Mr. Johnson. We think the parties that own or did own the lots lying in'Lenk’s addition are entitled to the fund that arises from the sale of that property, and that without being required to make any contribution either to the administrator, or Mrs. Lungren or Virginia who hold this homestead property. The decree may be drawn in accordance with that view. The administrator will pay the costs of this suit in this court.